UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | | |
|---|---|---|
| RENEE K., | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case # 1:19-CV-1104-DB |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | MEMORANDUM DECISION |
| | § | AND ORDER |
| Defendant. | § | |

## INTRODUCTION

Plaintiff Renee K. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") that denied her application for Disability Insurance Benefits ("DIB") under Title II of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* docket entry dated November 23, 2020).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 8, 11. Plaintiff also filed a reply brief. *See* ECF No. 12. For the reasons set forth below, Plaintiff's motion (ECF No. 8) is **GRANTED**, and the Commissioner's motion (ECF No. 11) is **DENIED.**

## BACKGROUND

On June 1, 2016, Plaintiff filed an application for SSI under Title II of the Act, alleging disability beginning November 16, 2015 due to: (1) rotator cuff tear; (2) traumatic rupture of cervical intervertebral disc; (3) spondylosis; (4) radiculopathy; and (5) high blood pressure. Transcript (Tr.) 168, 196. Plaintiff's application was initially denied on July 19, 2016, after which she requested an administrative hearing. Tr. 95-100, 103-04.

On July 10, 2018, Administrative Law Judge Paul Georger (the "ALJ") conducted a hearing in Buffalo, New York. Tr. 35-44. Plaintiff appeared and testified at the hearing and was represented by Kenneth R. Hiller, an attorney. Tr. 35. Timothy Janikowski, an impartial vocational expert ("VE"), also appeared and testified at the hearing. *Id*. On September 26, 2018, the ALJ issued an unfavorable decision, finding that Plaintiff was not disabled. Tr. 35-44. On June 21, 2019, the Appeals Council denied Plaintiff's request for further review. Tr. 1-8. The ALJ's September 26, 2018 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I.    District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112t (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II.    The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful

work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

3

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his September 26, 2018 decision:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2020;

2. The claimant has not engaged in substantial gainful activity since November 16, 2015, the alleged onset date (20 CFR 404.1571 *et seq*.);

3. The claimant has the following severe impairments: cervical spine with herniated discs cervical spine, status post ACDF CS through C7 with instrumentation and left rotator cuff tear, status post arthroscopic repair and migraine headaches (20 CFR 404.1520(c));

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526);

5. The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b)[1] except she can occasionally reach in all directions with the left arm, frequently use of ladders [*sic*], ropes and scaffolds; occasional stooping, kneeling and crouching; and she needs a sit/stand option at will;

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565);

7. The claimant was born on January 27,1965 and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563);

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564);

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2);

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a);

11. The claimant has not been under a disability, as defined in the Social Security Act, from November 16, 2015, through the date of this decision (20 CFR 404.1520(g)).

Tr. 35-44.

Accordingly, the ALJ determined that, based on the application for supplemental security income protectively filed on April 27, 2016, the claimant is not disabled under sections 216(i) and 223(d) of the Act. Tr. 44.

## ANALYSIS

Plaintiff asks the Court to reverse the Commissioner's determination, arguing that: (1) the ALJ erred by rejecting the opinions of Plaintiff's treating orthopedic surgeons and pain management doctor; and (2) the ALJ erred by failing to consider the functional capacity evaluation performed by physical therapist Mark E. Howard, PT, DPT, OCS ("Dr. Howard"). *See* ECF No. 8-1 at 12-20.

The Commissioner responds that the evidence as a whole substantially supports the ALJ's RFC. *See* ECF No. 11-1 at 9-15. First, argues the Commissioner, ALJ properly found that the opinions of several medical providers that Plaintiff was disabled, or partially disabled, deserved no weight at all because they encroached on "issues reserved to the Commissioner." *See id.* at 9 (citing 20 C.F.R. § 404.1527(d)). The Commissioner also argues that the ALJ properly discounted the opinion of Plaintiff's treating orthopedic surgeon, Edward D. Simmons, M.D. (Dr. Simmons"), because it was based primarily on Plaintiff's subjective complaints, which the ALJ found to be inconsistent with other evidence of record. *See id.* at 11-12 (citing Tr. 41). Finally, with respect to Dr. Howard's opinion, the Commissioner argues that Plaintiff has failed to meet her burden to show that she was harmed by any omitted discussion of the opinion of a "one-time examining

'other' medical source." *See id*. at 12-15. However, the Court notes that the ALJ did reference Dr. Howard's functional capacity evaluation ("FCE") in his analysis, although he did not refer to Dr. Howard specifically.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir.2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Plaintiff alleges disability from a left rotator cuff tear and symptoms related to a traumatic rupture of an intervertebral disc in her cervical spine (neck). Tr. 187. The record reflects that Plaintiff was injured on the job in August 2015 and stopped working in November 2015, allegedly as a result of those injuries. Tr. 158-59. Plaintiff was examined and received treatment for her neck and left shoulder impairments throughout the relevant period, including a December 2015 surgical repair of her left shoulder, an October 2016 surgical cervical fusion, and subsequent pain management and physical and massage therapy. Based on these impairments, the ALJ limited Plaintiff to light work with additional restrictions, including only occasional reaching in all directions with the left arm and the ability to change positions between sitting and standing at will. Tr. 38-39.

Plaintiff contends that the ALJ erred by granting "little weight" to the opinions of Plaintiff's treating sources, most notably Dr. Simmons, who performed surgery on Plaintiff's neck. *See* ECF No. 8-1 at 11. Dr. Simmons opined that Plaintiff would be able to, at most, perform

sedentary work. Dr. Simmons also repeatedly opined that Plaintiff was "100% disabled." Tr. 295, 301, 309, 346, 1778, 392, 397, 401, 406, 410, 497, 696.

Plaintiff also challenges the ALJ's assessment of the opinions of other treating physicians, who similarly found Plaintiff "one-hundred percent" disabled. Michael Grant, M.D. ("Dr. Grant"), performed rotator cuff repair surgery on Plaintiff on December 21, 2015. Tr. 450-52. Dr. Grant had seen Plaintiff approximately fifteen times in a period of two years, specifically treating her shoulder. In most of these visits, he opined that Plaintiff was "totally disabled until further notice." Tr. 315, 317, 275, 260, 258, 256, 464, 466, 468, 470, 472, 475, 477. Andrew Matteliano, M.D. ("Dr. Matteliano"), provided pain management treatment for Plaintiff on twelve occasions from June 2017 to May 2017. Tr. 577, 580, 582, 585, 587, 589, 591, 593, 595, 598, 600, 679, 987 He reported either total or one-hundred percent disability multiple times as well.

For claims filed prior to March 27, 2017,[2] the opinions of Plaintiff's treating physicians should be given "controlling weight" if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2). A legal conclusion "that the claimant is 'disabled' or 'unable to work' is also not controlling," because such opinions are reserved for the Commissioner. *Guzman v. Astrue*, No. 09-CV-3928 (PKC), 2011 WL 666194, at *10 (S.D.N.Y. Feb. 4, 2011) (citing 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1)); *accord Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) ("A treating physician's statement that the claimant is disabled cannot itself be determinative.").

---

[2] There was a recent change to the Administration's regulations regarding the consideration of opinion evidence will eliminate application of this "treating physician rule" for claims filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5848-49 (Jan. 18, 2017) (to be codified at 20 C.F.R. pts. 404 and 416). For the purposes of this case, however, the prior version of the regulation applies. *See Smith v. Colvin*, No. 16-CV-6150L, 2018 WL 1210891, at *2 (W.D.N.Y. Mar. 8, 2018).

An ALJ is required to consider several factors in determining how much weight an opinion should receive, including the length of the relationship and frequency of examinations, nature of the relationship, medical evidence that supports the opinion, consistency with the record as a whole, and if the physician's specialty is relevant to the impairment. *Burgess v. Astrue*, 537 F. 3d 117, 129 (2d Cir. 2008). If the ALJ gives the treating physician's opinion less than controlling weight, he must provide good reasons for doing so. *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998); *see also Schaal v. Apfel*, 134 F. 3d 496, 503-504 (2d Cir. 1998). An ALJ's failure to identify the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight given demonstrates a lack of substantial evidence, even if the conclusion the ALJ came to may seem justified on the record. *Wilson v. Colvin*, 213 F.Supp.3d 478, 482-483 (W.D.N.Y. 2016) (quoting *Blakey v. Comm'r*, 581 F.3d 399, 406 (6th Cir. 2009)). A failure to explicitly apply these factors is a procedural error. *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019); *see also Lefort v. Comm'r of Soc. Sec.*, 2019 WL 2994406 at *4 (W.D.N.Y. 2019).

Although the ALJ properly discounted the disability ratings of Dr. Simmons, Dr. Grant, and Dr. Matteliano as an issue reserved to the Commissioner, the ALJ's decision does not reflect that he fully considered Dr. Simmons' opinion on Plaintiff's work-related functional limitations. For example, Dr. Simmons noted that Plaintiff had "considerable muscle spasm of the shoulder muscles posteriorly and superiorly" with limited flexion, extension, and rotation," limited range of motion in her neck, decreased range of motion of her shoulder, decreased sensation in her hand, imaging studies showing disc space narrowing and spondylosis. Tr. 504, 1777, 400, 695.

These objective findings call into question the ALJ's assertion that Dr. Simmons' opinion "quite heavily" relied upon Plaintiff's subjective complaints. Tr. 41. However, that alone is "not a valid reason" for rejecting the opinion. *Jackson v. Comm'r of Soc. Sec.*, 2018 WL 4346593 at *4,

n. 6 (W.D.N.Y. 2018) (quoting *Mahon v. Colvin*, 2016 WL 3681466 at *4 (W.D.N.Y. 2016)). A

Plaintiff's subjective complaints are "an essential diagnostic tool." *Green-Younger v. Barnhart*,

335 F.3d 99, 107 (2d Cir. 2003). Furthermore, Dr. Matteliano similarly noted objective findings

including a limited range of motion in her shoulder, no reflexes in her ankles, trigger points, limited

range of motion and sensory loss (Tr. 579, 584, 586, 588, 590, 599, 986), and Dr. Grant found that

Plaintiff had a 95% loss of use in her left arm after stabilization (Tr. 474).

      With respect to the other treating physician factors, although the ALJ noted Plaintiff's

"long standing treatment relationship" with Dr. Simmons, he did not discuss the extent of that

relationship (that Dr. Simmons had performed Plaintiff's December 2016 neck surgery); did not

discuss the fact that Dr. Simmons was an orthopedic surgeon with experience  in spinal surgery;

and only discussed a few  of the objective findings included in Dr. Simmons' treatment notes. The

ALJ also did not discuss Plaintiff's treatment relationship with Dr. Grant and Dr. Matteliano, or

the fact that Dr. Grant was an orthopedic surgeon, or the frequency with which Plaintiff saw either

doctor. Tr. 42. As noted above, Dr. Grant saw Plaintiff approximately fifteen times in a period of

two years, specifically treating her shoulder, and Dr. Matteliano provided pain management

treatment on twelve occasions from June 2017 to May 2017.

      An ALJ is required to give "good reasons" for the weight accorded to the treating

physician's opinion in every case. *Lewis v. Apfel*, 62 F. Supp. 2d 648, 657 (N.D.N.Y. 1999) (Kahn,

J.). Although a "slavish recitation of each and every factor" is unnecessary "where the ALJ's

reasoning and adherence to the regulation are clear," *Atwater v. Astrue*, 512 Fed. Appx. 67, 70 (2d

Cir. 2013), no such clarity exists here because the ALJ failed to meaningfully discuss Plaintiff's

substantial treating history with Drs. Simmons, Grant, and Matteliano, or the objective findings

contained in their reports, examples of which are noted above.  Accordingly, the Court cannot

determine whether the ALJ's analysis of these treating source opinions was supported by substantial evidence.

As stated, the ALJ gave little weight to Dr. Simmons' opinion because the ALJ believed that his opinion was primarily based on Plaintiff's subjective complaints. Tr. 41. However, the ALJ did not cite any examination findings or any objective evidence that were inconsistent with Dr. Simmons' opinion. If the ALJ suspected an inconsistency between Dr. Simmons' opinion and his examination findings without other supporting evidence, the ALJ was required at the very least to contact Dr. Simmons in this regard. *See Burgess v. Astrue*, 537 F.3d at 129 ("In light of the ALJ's affirmative duty to develop the administrative record, 'an ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record.'"). When "nothing inherent" in a treating provider's examination findings necessarily refutes his or her opinion, the ALJ has a duty to "at the very least" to recontact the provider. *Keska v. Comm'r of Soc. Sec.*, 2019 WL 453362 at *6 (W.D.N.Y. 2019).

The record in this case reflects that Plaintiff was functionally limited by her impairments, even though the evidence may not have been presented in a way that specifically explained Plaintiff's ability to perform the requirements of work. *See Hoehn v. Colvin*, No. 14-CV-6401L, 2016 WL 241365, at *3-4 (W.D.N.Y. Jan. 21, 2016). There were a number of treating providers, in no association with one another, who cast at least a shadow of doubt on Plaintiff's ability to do substantial work. Although the ALJ may be correct in his analysis of the records which arguably may cast some doubt on Plaintiff's credibility, the Court finds that the ALJ should more thoroughly analyze the treatment records of Dr. Simmons, as well as Drs. Grant and Matteliano, and if necessary, contact these providers for clarification of their opinions with respect to the ALJ's RFC assessment, and/or obtain an independent functional capacity evaluation for a more accurate

assessment of Plaintiff's work-related limitations. Accordingly, the Court finds that remand is required on this narrow issue as set forth above. Otherwise the Court finds no error in the ALJ's decision.

Because the Court has already determined, for the reasons discussed above, that remand of this matter for further administrative proceedings is necessary, the Court declines to address Plaintiff's additional arguments. *See, e.g., Bell v. Colvin*, No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at \*10 (N.D.N.Y. Dec. 1, 2016) (declining to reach arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined remand was warranted*); Morales v. Colvin*, No. 13cv06844 (LGS) (DF), 2015 WL 2137776, at \*28 (S.D.N.Y. Feb. 10, 2015) (the court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand"), *adopted*, \*261 2015 WL 2137776 (S.D.N.Y. May 4, 2015).

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 8) is **GRANTED**, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 11) is **DENIED**, and this matter is **REMANDED** to the Commissioner for further administrative proceedings consistent with this opinion pursuant to sentence four of 42 U.S.C. § 405(g). *See Curry v. Apfel*, 209 F.3d 117, 124 (2d Cir. 2000). The Clerk of Court is directed to enter judgment and close this case.

**IT IS SO ORDERED**.

DON D. BUSH
UNITED STATES MAGISTRATE JUDGE